Kyle McLean (SBN 330580)
Lisa R. Considine (*pro hac vice forthcoming*)
Leslie L. Pescia (*pro hac vice forthcoming*)
SIRI & GLIMSTAD LLP
700 S. Flower Street, Suite 1000
Los Angeles, CA 90017
Telephone: 212-532-1091
Facsimile: 646-417-5967
Email: kmclean@sirillp.com
Email: lconsidine@sirillp.com
Email: lpescia@sirillp.com

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANIELLE COFIELD, individually and on behalf of all others similarly situated, | Case No.  2:24-cv-8934 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | Jury Trial Demanded |
| SOLO FUNDS, INC., | |
| Defendant. | |

Danielle Cofield ("Plaintiff"), individually and on behalf of the Class defined below, brings this action against SoLo Funds, Inc. and alleges as follows:

**INTRODUCTION**

1.     Defendant SoLo Funds, Inc. ("Defendant" or "SoLo") is a financial technology company operating throughout the United States offering consumers a small, short-term loans through its peer-to-peer lending platform.

2.     Solo Funds markets itself as a consumer-friendly alternative to high-cost, short-term loans, offering "no-interest" lending; however, this is far from the truth. SoLo misleads consumers and borrowers with advertising and disclosures that falsely claim its loans have zero interest and no surprise

1

fees when, in fact, it charges consumers interest and fees deceptively labeled as "tips" and "donations" that result in an exorbitant and unlawful total cost of credit.

3.    SoLo entices consumers to apply for loans through its platform by falsely representing in its advertisements that a consumer could obtain financing at zero interest. During the loan application process, borrowers are prompted to select a "Tip Fee" and are encouraged to pay larger tips in order to get funded.

4.    The tip fee is only one of the fees that a borrower is expected to pay to obtain a loan. The loan application further includes an additional step in which the borrower is prompted to select a "Donation Fee" that goes directly to SoLo. SoLo does not provide consumers with a "$0" SoLo donation fee option during the loan application process or even a way to click through to the next page without selecting an amount to pay toward SoLo Donation Fee. Rather, Solo obscures the method by which consumers can opt for no Donation Fee, hiding it in another section of its mobile application and failing to provide readily available information to consumers about how to disable the Donation Fee.

5.    Virtually all consumers who receive loans incur a tip fee, a donation fee, or both. These fees result in a cost of credit that is both unlawful, and not disclosed to the consumer.

6.    SoLo provides borrowers with loan documents that purported to disclose the amounts owed and costs of the loans, but fails to disclose fees that SoLo would seek to collect. For example, some of these documents stated that only the principal amount was due, and further stated that the APR on the loan was 0% and that the finance charge on the loan was $0.00. There was no disclosure whatsoever of the "tip fee" or the "donation fee" in the calculation of the finance charge and annual percentage rate for the loan. These fees, however, are ultimately included in the repayment amount due, in violation of the Truth-in-Lending Act, 15 U.S.C., ("TILA"), Regulation Z, and usury laws.

2

CLASS ACTION COMPLAINT

7.      SoLo has recently come under fire for exactly these practices. The Connecticut Department of Banking determined that renaming finance charges as 'tips' was in violation of the law, and after an investigation entered into a Consent Order whereby SoLo Funds was required to reimburse Connecticut borrowers all amounts paid as fees to SoLo Funds or a third-party lender in connection with any loan originated on the SoLo funds platform, including a civil penalty.[1] Similarly, the District of Columbia Office of the Attorney General also reached a settlement with SoLo Funds resolving allegations that SoLo deceived consumers about the true cost of the loans on its platforms and facilitated loans with over 500% APR on average, exceeding the District's usury cap.[2] And the Commissioner of Financial Protection and Innovation also concluding, by and through its investigation, the SoLo was funding loans that exceeded the maximum interest rates permissible under California law and that the promissory notes generated on the platform failed to comply with the Truth-in-Lending Act ("TILA") and Regulation Z, and entered into an Order requiring SoLo Funds to refund each California borrower all donations received by SoLo Funds, in addition to other relief.[3]

8.      Defendant's unlawful and deceptive lending practices outlined herein caused, and continues to cause, harm to Plaintiff and members of the Class.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because at least one class member is of diverse citizenship from Defendant, there are more

---

[1] https://portal.ct.gov/dob/newsroom/2023/settlement-with-solo-funds-announced (last accessed October 8, 2024); *see also* https://portal.ct.gov/-/media/dob/enforcement/consumer-credit/2023-cc-orders/solo-funds-inc---co.pdf  (last accessed October 8, 2024).
[2] https://oag.dc.gov/release/ag-schwalb-secures-settlement-fin-tech-lender (last accessed October 8, 2024); see also https://oag.dc.gov/sites/default/files/2023-05/DC%20v.%20Solo%20Funds%2023%20CAB%202665%20Consent%20Order%20Final%20Judgment.pdf (last accessed October 8, 2024).
[3] https://dfpi.ca.gov/wp-content/uploads/sites/337/2023/05/Consent-Order-SoLo-Funds-Inc.pdf (last accessed October 8, 2024).

CLASS ACTION COMPLAINT

than 100 class members, and upon information and belief, the aggregate amount in controversy exceeds $5,000,000 exclusive of costs and interest.

10.    This Court has personal jurisdiction over Defendant because its principal place of business is in Los Angeles, California, and it has conducted and continues to conduct substantial business in California.

11.    Venue is proper in this District under 28 U.S.C. § 1391 because the events that gave rise to the claims occurred in substantial part in this District.

## PARTIES

12.    Danielle Cofield is a citizen of Ohio. Plaintiff opened an account on the SoLo Funds marketplace in or around 2021. Plaintiff has utilized its services to obtain many loans throughout 2021 through March 2024. Plaintiff most recently utilized Solo Funds' loan services in or around March 2024 and was approved for a loan of $500 that Solo Funds both failed to fund and, despite same, still sought to collect repayment.

13.    SoLo Funds is a Delaware Corporation with its principal place of business headquartered at 3740 Motor Avenue, Los Angeles, California. SoLo Funds is a financial technology company that operates throughout the United States.

## FACTUAL ALLEGATIONS

14.    SoLo Funds first launched in 2018 as a "place where people could lend and borrow money without getting trapped by debt or straining family relationships."[4] Since then, it has operated an online platform through which consumers can obtain small, short-term loans.

---

[4] https://solofunds.com/community/ (Last accessed October 8, 2024).

CLASS ACTION COMPLAINT

15.    According to its website, SoLo has disbursed more than 1.4 million loans since its inception.[5]

16.    SoLo's purported business structure is that it operates a "peer-to-peer marketplace" through which it invites consumers to be both borrowers and lenders. Despite some claims that it simply operates a marketplace to connect borrowers and lenders, SoLo plays an active and material role in the servicing, funding, and collection of these consumer loans and profits from same.

17.    SoLo advertises its loan services to borrowers as a better, cheaper, and more transparent choice than other financial institutions or payday lending options; however, this is simply not the case.

18.    Specifically, SoLo advertises that there are no surprise charges or fees, and no compound interest associated with loans obtained through its platform.[6] SoLo repeatedly advertises that consumers could obtain loans with "0% APR" or with "0% interest." As detailed below, these claims are patently false as SoLo deceptively charges its consumers significant fees disguised as "tips" and "donations."

19.    SoLo further advertises the process of applying for and receiving a loan typically takes less than 20 minutes and the money is available instantly.[7]

20.    The maximum amount a consumer can obtain through SoLo is $575 and the minimum is $20. These amounts are directly set by SoLo. SoLo borrowers can generally set a single repayment date any time that is less than a month after the loan is funded.

21.    SoLo requires potential borrowers to provide their bank account information during the loan application process. If a loan is funded, SoLo uses that bank account information to set up

---

[5] https://solofunds.com/ (Last accessed October 10, 2024).
[6] https://solofunds.com/borrow/ (Last accessed October 8, 2024).
[7] *Id.*

CLASS ACTION COMPLAINT

automatic payments on the designated loan repayment date. After 35 days, SoLo assesses late fees if the loan has not been repaid.

22.     In addition to inviting consumers to borrow, SoLo also invites consumers to lend by encouraging consumers to review borrowers' loan requests and ultimately decide whether to "fund" those loan requests, making a profit based on the purported "tips" that the borrowers pay, which are further detailed below.

23.     To facilitate lending, SoLo provides prospective lenders with consumer credit information. SoLo collects information from other companies, including Apple, Google, and Plaid, concerning an applicant's cell phone, debit card, and deposit account history, as well as loan repayment history from prior loans originated through the SoLo platform. SoLo uses this information to generate a "SoLo Score," its proprietary credit score associated with prospective borrowers.

24.     SoLo requires its consumer lenders to open an account at Evolve Bank & Trust, which has a preexisting relationship with SoLo, through which they will fund the loan. Once a loan agreement is in place, SoLo initiates transfer of the principal loan amount from the lender to the borrower and transfer of the Donation Fee to itself, further explained below, from the lender to itself.

25.     Once repayment of a loan is due, SoLo deducts the principal amount, the Tip Fee, and the donation fee from the borrower and deposits that payment into the lender's Evolve Bank & Trust account.

**SoLo Disguised as the Total Cost of the Loan as "Tips" and "Donations"**

26.     SoLo invites borrowers to "submit an application and obtain a personal loan." Defendant's click-through loan application process requires the prospective borrower to set a Tip Fee, which is a fee payable to the person who funds the loan request. Although SoLo advertises that a borrower can request a loan with a $0 tip, such loan requests are unlikely to be funded on the SoLo

6

Platform. Upon information and belief, less than 1% of loans funded through SoLo Funds did not include a Tip Fee.

27.    SoLo encourages consumers not only to leave a Tip Fee but to leave the "maximum possible tip" to increase the speed and likelihood of the loan request being funded.

28.    In addition to a Tip Fee, the click-through application includes a section for borrowers to select a Donation Fee amount. The Donation Fee is displayed in a percentage amount, with three options, and there is no option for a zero-percent Donation Fee on the application screen. Indeed, in order to move to the next screen and submit the loan application, the borrower must select a Donation Fee amount. On the application screen, there is no way for a consumer to click to the next section without selecting one of the Donation Fee options, nor is there any information about how to move forward with the application without a Donation Fee.

29.    While SoLo advertises this Donation Fee as an "option," that is hardly the case. SoLo fails to disclose to consumers the "option" for a zero-percent Donation Fee, and fails to provide any information to consumers about how to move forward in the application process without paying a Donation Fee, depriving consumers of any real choice in paying a Donation Fee. In other words, contrary to the "no-interest" representations in its advertisements, a selection of a Donation Fee amount is a required step in the loan application process.

30.    Indeed, the only way to avoid the Donation Fee is to change the settings in the consumer's account profile, under the "donation" setting, which is including in the section related to "personal info" and "card info." Thjs setting had to be changed each time a borrower took out a loan. Nowhere on the platform is it disclosed that a consumer can selection the "no donation" option in their settings, nor is any information provided about how to do so. In other words, this option is hidden from consumers.

CLASS ACTION COMPLAINT

31.     While the Tip Fee is payable to the lender, the Donation Fee is payable directly to SoLo. SoLo does not indicate how it uses these fees absent a general statement that, "SoLo incurs costs to verify each member and process funding and payback transactions. This donation allows us to continue helping others."

32.     Thus, borrowers, including Plaintiff, do not obtain loans with the terms presented in SoLo's advertisements. To have a loan application funded, nearly every single prospective borrower had to pay a Tip Fee, a SoLo Donation Fee, or very likely both.

33.     SoLo's misrepresentations concerning the terms "no interest," "0% interest loan," and "0% APR" led prospective borrowers to believe that if they obtained a loan, they would be repaying the principal amount without paying interest or additional fees or charges as promised. However, SoLo imposed finance charges onto its borrowers and profited from charges by disguising these essentially mandatory charges as "Tips" and "Donations."

34.     To the contrary, many SoLo's loans carry an annual percentage rate of over 300%, and most of SoLo's loans carry an annual percentage rate of over 36%. Thus, while promoting no-interest loans, SoLo is actually subjecting its customers to exorbitant, unfair, and illegal interest rates. ***SoLo's False and Unlawful Disclosures***

35.     Despite having to pay Tip Fees and/or Donation Fees as part of the loan request process, SoLo does not include these amounts in the ultimate formal loan agreement generated. Moreover, the loan agreement is not always presented to the borrower prior to consummation of the loan. As part of the loan application and funding process, SoLo provides each borrower with documents, which includes a promissory note and a document titled "Truth in Lending Disclosures," both of which purport to describe the specific terms of the transaction, including the cost of credit.

36.     SoLo creates and controls the contents of these disclosures.

37.    Between March 2018 and May 2021, SoLo's promissory notes stated that the consumer promised to pay the lender not just the principal amount, but rather "the principal sum borrowed together with tips and or donations."

38.    Since May 2021, the promissory notes no longer refer to the ender Tip and SoLo Donation Fees as "due" or "payable." Instead, the promissory notes state that the consumer must repay only the original loan amount. But, in fact, the borrower is obligated in the amount of the principal amount due, plus Tip and Donation Fees, and SoLo debits the principal along with Tip Fees and the Donation Fees from the borrower's account on the repayment date.

39.    Since May 2021, SoLo's "Truth in Lending Disclosures" document does not include the Tip Fee or the Donation Fee in the "total of payments" disclosure box. Instead, SoLo lists only the principal amount and inputs "$0" as the "amounts paid to others on your behalf," even though almost all SoLo Platform loans include additional payments beyond the loan amount.

40.    The "Truth in Lending Disclosures" document that SoLo provided to borrowers always represented that the Annual Percentage Rate, which it defined as "The cost of your credit as a yearly rate," was 0%. The document represented that the Finance Charge, which it defined as "The dollar amount the credit will cost you," was $0.

41.    These disclosures were woefully inaccurate and, as a result. Unlawful, because, in the vast majority of SoLo loans, the amounts of the fee or the donation fee (or both) are set before the disclosure document is generated. The true nature of these fees are costs of credit and result in APRs in excess of 300% in most of the loans extended on the SoLo Platform.

*SoLo Scores*

42.    When a consumer applies for a loan on the SoLo Platform, that applicant must authorize SoLo to be able to "utilize data contained in [the] Application, including supporting documentation

9

provided, information related to your social media accounts, and a credit report, to develop a proprietary score" known as a SoLo Score.

43.    SoLo claims that its proprietary credit score measures a borrower's ability to repay loans on time.

44.    SoLo factors in information gathered from third parties in calculating a SoLo Score. For borrowers using Apple's iPhones, SoLo gathers information about the borrower's mobile device model and cellular service plan. It gathers similar information from Google for Android mobile phone users. SoLo also collects information from Plaid, a platform that enables applications to connect to users' bank accounts. SoLo uses Plaid to gather a borrower's deposit bank information, including the deposit account history, current and historical balances, insufficient funds fees, transaction frequency, and length of depository account history.

45.    Lenders receive several pieces of information from SoLo to help decide whether to fund a loan. SoLo's consumer report provides: (1) the SoLo Score (assigned between 0-100); and (2) a statement listing the number of repaid SoLo loans.

46.    SoLo failed to implement reasonable procedures to assure maximum possible accuracy of this report by failing to verify whether the SoLo Score reflected all SoLo loans that the consumer had repaid, failing to implement appropriate procedures to detect fraud or lender account problems that may have resulted in a borrower appearing overdue on a loan that the borrower had repaid, and failing to ensure the accuracy of the number of repaid loans appearing below the SoLo Score was accurate.

***SoLo's Collection Practices***

47.    According to its Terms, only SoLo or its agents can attempt to collect on an unpaid loan. Thus, its consumer lenders are not permitted to communicate with the borrower.

10

48.     If a consumer fails to repay a loan, SoLo handles collection attempts against the consumer for up to 90 days past the repayment date. If unsuccessful after 90 days, SoLo enters into a third-party debt collector relationship.

49.     SoLo retains 30% of the loan amount for itself as a "recovery fee" if it successfully collects on the loan.

50.     SoLo also charges late fees to borrowers that have ranged from 10% to 15% of the loan amount.

51.     In addition to late fees, SoLo also charges consumers "Synapse Transaction Fees" purportedly for the funding and repayment of transaction costs by the payment provider (Synapse).

52.     Other than funding the loans , SoLo controls all of the aspects of the lending transaction. For example, SoLo creates the promissory notes and TILA disclosures that govern the loans and has sole control over the contents of these documents; SoLo sets the maximum amount a consumer can borrower; SoLo controls the repayment terms of the loan; SoLo gives its lenders the proprietary credit score it generates for users of its app; SoLo is responsible for obtaining repayment or collection of any loans; and importantly, SoLo charges, collects, and receives the Donation Fee paid by borrowers to obtain loans.

***Plaintiff's Experience with SoLo Funds***

53.     Plaintiff opened an account with SoLo in or about January 2021.

54.     When Plaintiff opened her SoLo account, SoLo sent her a welcome email that contained some "insights" on how to borrow successfully through SoLo. One of these insights stated that agreeing to pay the maximum tip makes a loan twice as likely to be successfully funded.

CLASS ACTION COMPLAINT

55.     Plaintiff obtained a loan soon thereafter on or about January 28, 2021 and has since obtained many additional loans. Plaintiff has obtained approximately 80 loans through SoLo and repaid more than $35,000 in principal amounts due.

56.     On each loan obtained, Plaintiff paid a Tip Fee and a Donation Fee. As encouraged by SoLo, Plaintiff almost always paid the maximum suggested Tip Fee and has always paid a recommended Donation Fee. Thus, Plaintiff has ultimately paid a significant cost for the financing of these loans.

57.     For example, on May 13, 2022, Plaintiff obtained a loan for $500, which included $95.00 in Tip and Donation Fees. This was to be repaid three days later on May 16, 2023, yielding approximately a 2,311.66% APR. Similarly, on June 28, 2021, Plaintiff obtained a loan for $325, and paid $75.00 in Tip and Donation Fees. This was due to be repaid on July 9, 2021, yielding approximately a 765.73% APR.

58.     Despite the extraordinary cost of these loans, SoLo represented that the loans had a $0.00 Finance Charge and a 0% APR.

59.     Plaintiff was unaware of the cost of SoLo's loans, and has stopped using the SoLo platform for her borrowing needs.

60.     On or about April 19, 2024, Plaintiff applied for and was successfully approved for a loan of $500 due to be repaid on May 4, 2024. The Truth in Lending Disclosure associated with this loan indicates a 0% annual percentage rate, a $0 finance charge, and displays the total amount financed as $500. Contradictory to this disclosure, the amount due to be repad by Plaintiff to SoLo shown on her SoLo account was $575.

61.     Despite being successfully approved for the loan and SoLo advertising that funds would be available to consumers immediately, SoLo failed to ever fund Plaintiff's account with respect to the

12

April 2024 loan. SoLo showed the loan as "funded" in Plaintiff's account even though it never deposited any funds into Plaintiff's account.

62.    Plaintiff repeatedly attempted to reach out to SoLo about the issue to no avail. SoLo instead continued to send her communications to check her SoLo wallet and withdraw the funds – funds that SoLo never deposited. Plaintiff continued attempting to inform SoLo that it failed to fund her loan, again to no avail.

63.    Worse, on the repayment date, SoLo sent Plaintiff a "Payment Overdue" notice seeking repayment for a loan that Plaintiff never actually obtained.

## CLASS ACTION ALLEGATIONS

64.    Plaintiff brings this action pursuant to Rule 23(b)(2) and (b)(3) on behalf of herself and on behalf of all other persons similarly situated.

65.    Plaintiff proposes the following Classes, subject to amendment as appropriate:

> **Nationwide Class:** All individuals who obtained an advance or a loan through the SoLo Funds app and paid a tip fee, donation fee, late fee, synapse fee, recovery fee, or any other interest, fee, charge or cost.

> **Ohio Subclass:** All individuals in Ohio who obtained an advance or a loan through the SoLo Funds app and paid a tip fee, donation fee, late fee, synapse fee, recovery fee, or any other interest, fee, charge or cost.

66.    Excluded from the Class are Defendants, their parents, subsidiaries, affiliates, officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

67.    The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

68.    Plaintiff reserves the right to modify or amend the definitions of the proposed Class before the Court determines whether certification is appropriate.

13

69. **Numerosity.** This action is appropriately suited for a class action. The members of the Class are so numerous that the joinder of all members is impracticable. Plaintiff is informed, believes, and thereon alleges, that each proposed Class contains thousands of customers who have been damaged by Defendants' conduct as alleged herein, the identity of whom is within the knowledge of Defendant and can be easily determined through Defendant's records.

70. **Commonality.** This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

- Whether Defendant misled Plaintiff and those similarly situted about the terms of the loans provided on its platform;

- Whether Defendant clearly and conspicuously disclosed to Plaintiff and those similarly sutured the total cost of financing;

- Whether Defendant clearly and conspicuously disclosed accurately the APR, the rate of interest, the Finance Charge, and the Amount Financed;

- Whether Defendant's failure to clearly and accurately make the aforementioned disclosures is a violation of the Truth-in-Lending Act, 15 U.S.C. §1601 *et seq.* and Regulation Z, 12 C.F.R. §1026.17.

- Whether Defendant's failure to disclose Tip Fees and Donation Fees in the Truth-in-Lending Disclosure is a violation of TILA;

- Whether the alleged conduct of Defendant violates California Civil Code §1750 *et seq.*, California Business & Professions Code §17500 *et seq.*, California Business & Professions Code §17501 *et seq.* and/or California Business & Professions Code §17200 *et seq.*

- Whether Defendant's acts and omissions violate Ohio law;

- Whether Defendant's marketing, advertising, and/or promotional material for its products is deceptive, unfair, and/or misleading;

14

- Whether Defendant's conduct was deceptive, unfair, and/or misleading;

- Whether Plaintiff and Class and Sub-class Members are entitled to monetary damages as a result of Defendants' conduct; and

- Whether Plaintiff and the Class and Sub-class Members are entitled to equitable, declaratory and/or injunctive relief and the nature of that relief.

71.    **Typicality.** Plaintiff's claims are typical of the claims of the members of the Class, because, *inter alia*, all Class Members have been injured through the uniform misconduct described above and were improperly charged additional and unfair fees despite being promised interest-free loans. Moreover, Plaintiff's claims are typical of the Class Members' claims because Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class.

72.    **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff and the Class are all customers of Defendant and were harmed by Defendant's misconduct outlined herein. Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

73.    **Superiority.** A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class,

on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

74.    Plaintiff seeks monetary damages, including compensatory damages on behalf of the Class, and other equitable relief on grounds generally applicable to the entire Class. Unless a Class is certified, Defendant will be allowed to profit from its unfair and unlawful practices, while Plaintiff and the members of the Class will have suffered, and will continue to suffer, damages. Unless a Class-wide injunction is issued, Defendant will likely continue to benefit from the violations alleged, and the members of the Class and the general public may continue being unfairly treated.

75.    Because Plaintiff seeks injunctive relief for Class Members, the prosecution of separate actions by individual members of the Class creates a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for the Defendants in this action. Prosecution as a class action will eliminate the possibility of repetitious litigation.

76.    Defendant has acted and refused to act on grounds generally applicable to the Class, making final injunctive relief appropriate with respect to the Class as a whole.

77.    Plaintiff does not anticipate any difficulty in the management of this litigation.

## COUNT I
### VIOLATION OF THE TRUTH IN LENDING ACT, 15 U.S.C. §§ 1601 *et seq.*
### (Plaintiff on behalf of herself and the Class and Subclass)

16

78.    Plaintiff, on behalf of herself and those similarly situated, repeats and realleges each and every allegation contained in Paragraphs 1-77 as if fully set forth herein.

79.    Plaintiff brings this claim individually and on behalf of the members of the Class.

80.    Defendant is a "creditor," Plaintiff and the members of the Class are "persons," and the loans facilitated by Defendant to Plaintiff and members of the Class are "consumer credit transactions" within the meaning of TILA. 15 U.S.C. §§ 1602(e)-(g), (i). The Truth in Lending Act, 15 U.S.C. §1601 ("TILA"), and the regulations promulgated thereunder, govern the timing, content and form of disclosures for many credit transactions.

81.    Specifically, Regulation Z, 12 C.F.R. §1026.17, requires that certain disclosures must be made by a creditor in a clear and conspicuous manner in writing and prior to consummation of the transaction.

82.    Under the Official Interpretation of Regulation Z, §1026.17(a)(1), "clear and conspicuous" generally requires that the disclosures be made in a "reasonably understandable form."

83.    Those required disclosures include the identity of the creditor (12 C.F.R. §1026.18(a)), the amount financed (§1026.18(b)), the itemization of the amount financed (§1026.18(c)), the finance charge (§1026.18(d)) the annual percentage rate (§1026.18(e)), the payment schedule (§1026.18(g)), the total of payments (§1026.18(h)), the total sale price (§1026.18(j)), and any late payment amount (§1026.18(l)).

84.    Here, Defendant failed to properly disclose the finance charge, the annual percentage rate, and any late payment fee, in violation of 12 C.F.R. §1026.17(a)(1) and 12 C.F.R. §1026.18(a-d, e and l).

17

85.     Plaintiff and those similarly situated were repeatedly charged Tip Fees and Donation Fees with each loan that she obtained through SoLo Funds. Those Fees are not included in the Finance Charge or APR of the "Truth in Lending Disclosure" Statement.

86.     However, Plaintiff and those similarly situated were obligated to pay Tip Fees and Donation Fees as a cost of obtaining financing.

87.     By failing to disclose that the Tip Fee and Donation Fee was indeed a cost of financing, Defendants undisclosed the Finance Charge and the APR of the loan.

88.     Plaintiff and those similarly situated suffered actual damages and monetary harm as a result of Defendant's violation of TILA, in that Plaintiff and those similarly situated were never informed of the true cost of their loans.

89.     As a result of Defendant's conduct, Plaintiff and those similarly situated have suffered a concrete and legally cognizable injury by not receiving the disclosures mandated by Congress under TILA and Regulation Z, Defendant is liable to Plaintiff for actual and statutory damages pursuant to 15 U.S.C. §1640(a).

**COUNT II**
**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW**
**Cal. Bus. & Prof. Code § 17200 *et seq.***
**(Plaintiff on behalf of herself and the Class)**

90.     Plaintiff, on behalf of herself and those similarly situated, repeats and realleges each and every allegation contained in Paragraphs 1-89 as if fully set forth herein.

91.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

92.     California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, prohibits unfair competition, including "any unlawful, unfair or fraudulent business act or practice . . . ."

18

93.     With respect to "unfair" practices, in the consumer context, courts "generally continu[e] to apply a broad[] standard . . . encompassing business practices that 'offend[] an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 854 (N.D. Cal. 2022) (quoting *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886-87, 85 Cal. Rptr. 2d 301 (1999)).

94.     Defendant engaged in unfair competition and unfair, unlawful or fraudulent business practices through the conduct, statements, and omissions described herein, and by knowingly and intentionally disguising the cost of credit and interest as "Tip" and "Donations."

95.     Defendant also engaged in unfair Defendant engaged in unfair competition and unfair, unlawful or fraudulent business practices through the conduct, statements, and omissions described herein, and by knowingly and intentionally misrepresenting to consumers that their loans have no interest and no surprise fees.

96.     Defendant should have disclosed to Plaintiff and those similarly situated that the loans offered on their platform were indeed not interest-free, but instead included exorbitant rates of interest. Similarly, Defendant should have disclosed on its website information pertaining to a consumer's ability to refuse to pay a Donation Fee.

97.     In connection with the servicing of loans funded through its platform, SoLo Funds has routinely made representations to consumers about the amounts owed by borrowers. Specifically, SoLo has routinely generated Truth-in-Lending Disclosures that do not include amounts for Tip Fees or Donations Fees, despite the fact that these amounts will be debited from a consumer account by SoLo.

98.     SoLo's acts and practices have deceived Plaintiff and those similarly situated, and are likely to deceive the public. Plaintiff and members of the Class all suffered financial injury due to Defendants' unfair and unlawful conduct in violation of the UCL.

19

99.     The injuries suffered by Plaintiff and those similarly situated are not greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff and those similarly situated should have reasonably avoided.

100.    Defendant's acts and practices are unlawful because they claim the loans had 0% APR, in violation of California Financial Code Section §§ 22161(a), 22346(b), 22332, and 22337(a) and because the loans exceeded the maximum interest rates permissible in violation of California Financial Code §§ 22303-04. Plaintiff and those similarly situated have suffered an injury in fact, including the loss of money or property, as a result of Defendant's unfair, unlawful, and/or deceptive practices.

101.    Plaintiff seeks to enjoin further unlawful and unfair acts or practices by Defendants under Cal. Bus. & Prof. Code § 17203.

102.    Plaintiff, individually and on behalf of the other Class members, requests that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing their unfair and/or unlawful practices; to order Defendant to refund all fees paid by its consumers; to order Defendants to implement systems sufficient to fully inform consumers of the true cost of services and ensure Defendant complies with those disclosures; to restore, via restitution or disgorgement, any monies Defendant acquired by unfair competition, as provided by Cal. Bus. & Prof. Code §§ 17203 & 3345; and for such other relief as may be just and proper.

**<u>COUNT III</u>**
**VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT ("CLRA"),**
**Cal. Civ. Code 1750 *et seq.***
**(Plaintiff on behalf of herself and the Class)**

103.    Plaintiff, on behalf of herself and those similarly situated, repeats and realleges each and every allegation contained in Paragraphs 1-102 as if fully set forth herein.

104.    Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

20

105.   The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices . . . undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770.

106.   Defendants are "persons" as defined in Cal. Civ. Code § 1761(c).

107.   Plaintiff and members of the Class are "consumers" as defined in Cal. Civ. Code § 1761(d).

108.   The services that SoLo provides in connection with consumer loan agreements are "services" as defined in Cal. Civ. Code § 1761(b).

109.   Both the making of and performance under SoLo's Terms of Service and loan agreements are "transactions" as defined in Cal. Civ. Code § 1761(e).

110.   SoLo represented that its offered through its platform no-interest loans with no surprise fees, and in doing so violated Cal. Civ. Code § 1770(a)(14) (representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law) and in violation of Cal. Civ. Code § 1770(a)(5) (representing that goods or services have characteristics, uses, benefits, or quantifies that they do not have); Cal. Civ. Code § 1770(a)(9) (advertising goods or services with intent not to sell them as advertised).

111.   Furthermore, by advertising its loans as interest-free and with no surprise fees, SoLo violated Cal. Civ. Code § 1770(a)(29) (offering services without disclosing all mandatory fees or charges).

112.   SoLo's practice of misrepresenting, actively concealing, and/or failing to disclose the true cost of loans offered through its platform violated and continues to violate the CLRA.

21

113.    Defendant's misrepresentations were likely to deceive Plaintiff and reasonable consumers. Defendant knew, or should have known, that these statements were inaccurate and misleading.

114.    Defendant's misrepresentations were intended to induce reliance, and Plaintiff reasonably relied on them when making her borrowing decisions. Defendant's misrepresentations were a substantial factor in Plaintiff's borrowing decisions.

115.    Defendant's deceptive practices significantly impacted Plaintiff and the members of the Class. The misleading information presented, and the omissions made, were material, meaning a reasonable person would consider them and be impacted by them heavily when deciding whether to borrow through SoLo funds. This false information and omissions directly caused financial harm.

116.    Class-wide reliance can be inferred because Defendant's misrepresentations were material in that a reasonable consumer would consider them important when deciding whether to borrow.

117.    Plaintiff and members of the Class were injured as a direct and proximate result of Defendant's conduct, and Plaintiff and members of the Class suffered ascertainable loss caused by Defendants' conduct, as outlined herein.

118.    Plaintiff, on behalf of herself and the Class, seeks an order enjoining Defendants' unfair acts or practices under Cal. Civ. Code § 1780(a)(2). Specifically, Plaintiff asks the Court to order Defendant to (1) immediately cease charging fees that are not included in disclosure documents; (2) immediately cease charging fees in amounts that exceed lawful interest rates; and (3) adopt systems and practices sufficient to clearly and conspicuously inform consumers of the true costs of obtaining loans through SoLo.

CLASS ACTION COMPLAINT

119.    Plaintiff further seeks an award of damages on behalf of herself and the Class.  Plaintiff sent by Certified Mail, Return Receipt Requested, a notice to comply with said requirements on June 13, 2024, and Defendant confirmed receipt of same via email on July 25, 2024.  Defendant has refused or failed to timely respond to the CLRA demand notice sent.  Accordingly, pursuant to §1780 and §1782(b) of the CLRA, Plaintiff is entitled to recover actual damages, punitive damages, attorneys' fees and costs, and any other relief the Court deems proper.

**COUNT IV**
**VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW ("FAL")**
**Cal. Bus. & Prof. Code §§17501 *et seq.***
**(Plaintiff on behalf of herself and the Class)**

120.    Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-119 as if fully set forth herein.

121.    Plaintiff brings this claim individually, and on behalf of the members of the Class against Defendant.

122.    Defendant has violated Section 17501 of the Business and Professions Code.

123.    Defendant has engaged in false or misleading advertising in violation of the FAL. Defendant advertised, and continues to advertise, loans that are available on its platform with zero interest no surprise fees.  These statements are false, misleading, and/or have the tendency and likelihood to deceive reasonable consumers.  *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1173 (2018) ("these laws prohibit 'not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'"). To state a claim under the FAL "'it is necessary only to show that "members of the public are likely to be deceived."' *Id*. (citations omitted).

124.    Defendant engaged in deceptive advertising practices within California and nationwide. These practices involved promoting its services through online platforms that contained untrue or

misleading statements about the advertised goods. Notably, Defendant knew that that the information being disseminated was inaccurate.

125.    As alleged more fully above, Defendant advertises that consumers can obtain interest-free loans on its website when, in fact, Defendant is charging interest masquerading as Tip Fees and Donation Fees.

126.    The deceptive advertising practices employed by Defendant led Plaintiff and the members of the Class to make decisions based on inaccurate information. Defendant's misrepresentations were intended to induce reliance, and Plaintiff reasonably relied on these misrepresentations when making her borrowing decisions.

127.    Class-wide reliance can be inferred because Defendant's misrepresentations were material.

128.    Defendant's misrepresentations were a substantial factor and proximate cause in damages to Plaintiff and the members of the Class.

129.    Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's conduct.

**<u>COUNT IV</u>**
**VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW ("FAL")**
**Cal. Bus. & Prof. Code §§17500 *et seq.***
**(Plaintiff on behalf of herself and the Class)**

130.    Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-129 as if fully set forth herein.

131.    Plaintiff brings this claim individually, and on behalf of the members of the Class against Defendant.

132.    Defendant has violated Section 17501 of the Business and Professions Code.

24

133.    As alleged more fully above, Defendant has made and disseminated false and misleading statements of facts in its advertisements to Plaintiff and the class members by advertising false loan terms.

134.    Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers. Defendant knew, or should have known, that these statements were inaccurate and misleading.

135.    Defendant's misrepresentations were intended to induce reliance, and Plaintiff reasonably relied on the statements when making borrowing decisions. Defendant's misrepresentations were a substantial factor in Plaintiff's borrowing decision.

136.    Class-wide reliance can be inferred because Defendant's misrepresentations were material in that they concerned the cost of the loan.

137.    Defendant's misrepresentations were a substantial factor and proximate cause in damages to Plaintiff and the members of the Class.

138.    Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's conduct.

### COUNT V
**VIOLATION OF OHIO CONSUMER SALES PRACTICES ACT,**
**Ohio Rev. Code §1321.01**
**(Plaintiff on behalf of herself and the Ohio Subclass)**

140.    Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-138 as if fully set forth herein.

141.    Plaintiff brings this cause of action on behalf of herself and the Ohio Subclass against Defendant.

142.    Plaintiff and members of the Ohio Subclass are persons within the context of the Ohio Consumer Sales Practices Act ("OCSPA"), ORC Ann. §1345.01(B).

143.    Defendant is a person and a supplier within the context of the OCSPA, ORC Ann. §1345.01(B) and (C).

144.    At all times relevant hereto, Defendant was engaged in consumer transactions as defined under the OSCPA, ORC Ann. §1345.01(A) and §1321.35.

145.    Plaintiff and the Ohio Subclass members are "consumers" who purchased the services of SoLo funds for personal, family, or household use within the meaning of OCSPA, O.RC Ann. 1345.01(B).

146.    The OCSPA broadly prohibits deceptive and unconscionable acts or practices, forbidding suppliers from engaging in an "unconscionable act or practice in connection with a consumer transaction" OCSPA, ORC Ann. § 1345.02(A) and 1345.03(A).  Such an unconscionable act or practice by a supplier violates the OCSPA whether it occurs before, during, or after the transaction.

132.    Plaintiff and the other Ohio Sub-class Members reasonably relied upon Defendant's misrepresentations and omissions alleged herein regarding the cost of the loans offered on its platforms.

133.    Defendant's conduct, as described herein, constitutes unfair or deceptive acts or practices in the course of a consumer transaction, in violation of ORC Ann. § 1345.02(A) and § 1345.03(A).

134.    Defendant violated the OCSPA by knowingly representing that the loans offered have characteristics or benefits that they do not have. ORC Ann. § 1345.02(B)(1) and (2).

135.    Defendant knew at the time the transaction was entered into about the inability of consumers to receive the advertised benefit from the subject of the consumer transaction.  ORC Ann. § 1345.03(B)(3).

136.     Defendant also violated the OCSPA by violating the Short-term Loan Law contained therein. *See* ORC Ann. §§1321.35-.48.

137.     The loans offered, facilitated, brokered and/or made by SoLo were "short-term loans" as defined by ORC Ann. §§1321.35-.48.

138.     Section 1321.39 places certain requirements and restrictions on making short-term loans, which include but are not limited to the following: the loan duration may not be less than ninety-one days, unless the total monthly payment on the loa does not exceed an amount that is 6% of the borrower's verified gross monthly income or 7% of the borrower's verified net monthly income, whichever is greater (Section 1321.39(B)(1)); the loan contract sets forth in a clear and concise manner the total amount of fees and charges the borrower will be required to pay (Section 1321.39(C)(1)); the total of each payment (Section 1321.39(C)(2)); a statement, printed in boldface type of the minimum size of ten points, stating "WARNING: The cost of this loan is higher than the average cost charged by financial institutions, such as banks or credit unions, on substantially similar loans. A financial institution may be able to offer you a similar loan at a lower cost" (Section 1321.39(C)(3)); a statement informing the borrower of where and how to submit complaints regarding the loan or lender (Section 1321.39(C)(4)); the requisite disclosures under the Truth in Lending Act, 15 U.S.C. 1601 *et seq.* (Section 1321.39(C)(5)); the APR (Section 1321.39(C)(6)); a 3-day notice of recission (Section 1321.39(C)(7)); and a statement informing a consumer that electronic payment is optional and may be revoked at any time. (Section 1321.39(C)(8)).

139.     SoLo failed to include any of the aforementioned disclosures on any of Plaintiff's loan contracts or those of similarly situated consumers.

140.    Section 1321.39(E) also requires that any such short-term loan offered to borrowers may be cancelled or rescinded on or before five p.m. of the third business day immediately following the day of the loan transaction upon the borrower returning the originally contracted loan amount.

141.    SoLo failed to offer Plaintiff or the members of the Ohio Subclass a right of rescission, nor did SoLo treat those loans where the originally contracted loan amount within three business days as cancelled or rescinded.

142.    Furthermore, Section 1321.40 of the Short-term Loan Law provides a licensee may not charge an interest rate that exceeds 28% per annum. *See* ORC Ann. §1321.40(E).

143.    SoLo violated Section 1321.40(E) by charging Plaintiff and the members of the Ohio Subclass interest in excess of 28% on loans made through the SoLo platform.

144.    Finally, pursuant to Ohio Rev. Code Ann. § 1321.36:

> No person shall engage in the business of making short-term loans to a borrower in Ohio, or, in whole or in part, make, offer, or broker a loan, or assist a borrower in Ohio to obtain such a loan, without first having obtained a license from the superintendent of financial institutions under Sections 1321.35 to 1321.48 of the Revised Code.

145.    Loans made in violation of Ohio Rev. Code Ann. § 1321.36 are void and the lender has no right to collect, receive, or retain any principal, interest, fees, or other charges in connection with the loan.

146.    Upon information and belief, Defendant was not licensed to make short-term loans, offer, or broker a loan, or assist a borrower in Ohio to obtain such a loan, at all relevant times herein.

147.    Section 1321.41 identifies those prohibited practices of lenders. Defendant violated Section 1321.41 by and through its violations of Section 1321.36 (licensing), Section 1321.39 (governing disclosures in the loan contract), and Section 1321.40 (charging of usurious interest). *See* Ohio Rev. Code Ann. §§1321.41(A), (B), and (C).

28

148.     The Short-term Loan Law also prohibits a licensee from making, publishing, or otherwise disseminating, directly or indirectly, any misleading or false advertisements, or engaging in any other deceptive trade practice.  *See* Ohio Rev. Code Ann. §1321.41(N).

149.     Defendant violated Ohio Rev. Code Ann. §1321.41(N) by making, publishing, or otherwise disseminating, directly or indirectly, any misleading or false advertisements related to the cost of loans offered on its platform.

150.     A violation of Section 1321.41 is a *per se* unfair or deceptive act or practice in violation of Section 1345.02.

151.     As such, Defendant's conduct in violation of the Short-Term Loan Law, as described herein, constitutes unfair or deceptive acts or practices in the course of a consumer transaction, in violation of ORC Ann. § 1345.02(A).

140.     Defendant's representations, concealment, omissions, and other deceptive conduct were likely to deceive and cause misunderstanding and/or cause Plaintiff and the other Ohio Subclass members to be deceived about the cost and terms of loans offered on its platforms.

141.     Plaintiff and the Ohio Subclass members have been damaged as a proximate result of Defendant's violations of the Ohio Consumer Sales Practices Act and Short-term Loan Law. They have suffered damages as a direct and proximate result.

144.     Based on Defendant's unfair and/or deceptive acts or practices, Plaintiff and the Ohio Subclass members are entitled to relief, including actual economic damages, punitive damages, costs, and attorney's fees, under ORC Ann. §1345.09.  Plaintiffs and Ohio Sub-class members are also entitled to injunctive relief, seeking an order enjoining Defendant's unfair and/or deceptive acts or practices.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against

29

Defendants in the form of an Order:

 A. Certifying this action as a class action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure and naming Plaintiff as representatives of the Class and Plaintiff's undersigned attorneys as Class Counsel to represent the Class Members;

 B. Naming Plaintiff as the representative of the representative of the Class;

 C. Declaring that Defendants' conduct violated the laws referenced herein;

 D. Finding in favor of Plaintiff and the Class on all counts asserted herein;

 E. Awarding actual, consequential, punitive, statutory and treble damages;

 F. Awarding applicable prejudgment post-judgment interest on all amounts awarded;

 G. For injunctive relief as pleaded or as the Court may deem proper;

 H. For disgorgement and restitution to Plaintiff and the Class all monies received or collective from Plaintiff and the Class and all forms of equitable relief;

 I. Awarding Plaintiff and the Class reasonable attorneys' fees and expenses and costs of suit;

 J. Awarding damages in an amount to be determined at trial; and

 K. For such other and further relief as the Court may deem proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury as to all triable issues.

Dated: October 16, 2024

   /s/ Kyle McLean

Kyle McLean (SBN 330580)
Lisa R. Considine (*pro hac vice forthcoming*)
Leslie L. Pescia (*pro hac vice forthcoming*)
SIRI & GLIMSTAD LLP
700 S. Flower Street, Suite 1000
Los Angeles, CA 90017
Telephone: 212-532-1091
Facsimile: 646-417-5967
Email: kmclean@sirillp.com
Email: lconsidine@sirillp.com
Email: lpescia@sirillp.com

*Attorneys for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT